## J. R. MATEER
### v.
## THOMAS GREEN.

*Sales—Fraud—Estoppel* in pais—*Evidence.*

1.  In order to support the plea of estoppel *in pais*, it must be shown that but for the acts and declarations of the one party which it would be inequi-table to allow him to retract, the other would never have taken the position occupied by him.

2.  In an action involving the title to a half interest in a stock of goods, this court holds that the plaintiff is estopped through his acts from setting up and maintaining his claim thereto.

[Opinion filed March 1, 1889.]

APPEAL from the Circuit Court of Jefferson County; the Hon. C. C. BOGGS, Judge, presiding.

Mr. C. H. PATTON, for appellant.

Every fact and element of an estoppel *in pais* against appel-lee was not only abundantly proved by appellant, but admitted

by appellee, and the court told the jury by its instruction, which is copied into the abstract, that in such case they should find for appellant. But they wholly disregarded the evidence and the law as laid down by the court in the instruction mentioned, and their verdict was, at first blush, contrary to both the law and the evidence. Hence the court erred in overruling the motion for a new trial.

In Anderson v. Armstead, 69 Ill. 454, the court said :

"The law is familiar, that where the owner of property holds out another, or allows him to appear as the owner thereof, * * * and innocent parties are thus led into dealing with such apparent owner, * . * * they will be protected. Their rights in such cases do not depend upon the actual title, * * * but they are derived from the act of the real owner, which precludes him from disputing as against them the existence of the title * *· * upon the faith of which they dealt." And the court cites Bigelow on Estoppel, 468; Higgins v. Ferguson, 14 Ill. 269; Donaldson v. Holmes, 23 Ill. 85 ; Schwartz v. Saunders, 46 Ill. 18.

Now, by the principle of the above authorities, when appellee denied he was owner, and held out Nesmith's wife to be the owner, he estopped himself to deny this and claim the ownership after the officer, in reliance upon his statements, had acted upon them by the taking of the goods on execution.

Appellee saw his goods taken under execution without objection, and as the result of his disclaimer of ownership, and then objected before the goods had been sold. But his action only differs in the matter of the time at which the objection was made from the case of McConnell v. The People, 84 Ill. 583, in which case the court held the owner was estopped. See also, Stewart v. Menford, 91 Ill. 58.

The general doctrine that where a party fails to make known his rights, when equity and good conscience require that he should do so to protect the interest of others, he can not be heard, as against them, to assert these rights, is laid down in Higgins v. Ferguson, 14 Ill. 268; Cochran v. Harrow, 22 Ill. 345; Donaldson v. Holmes, 23 Ill. 83 ; Lloyd v. Lee, 45 Ill. 277 ; Kane Co. v. Herrington, 50 Ill. 239; Eldridge v. Walker,

80 Ill. 270; Leeper v. Hersman, 58 Ill. 218; Walker v. Mulvean, 76 Ill. 18.

Messrs. POLLOCK & POLLOCK and ALBERT WATSON, for appellee.

GREEN, P. J.   This was a trial of the right of property, Green, the appellee, claiming to be the owner of an undivided half interest in a stock of goods, which interest had been levied on June 7, 1887, by Felts, a constable, as the property of Moore, by virtue of an execution in favor of appellant against Moore and Nesmith.   Appellee claims to have bought the entire stock by purchasing Moore's one-half interest in March, 1886, and Nesmith's interest, the remaining half, April 1, 1887.

Before the justice of the peace, judgment was rendered against Green, who appealed to the Circuit Court, where a trial was had, resulting in a finding and judgment for him, to reverse which this appeal was taken.   Appellant, as grounds for reversal, claims the sale by Nesmith to appellee was a sham sale, and appellee did not purchase in good faith, and that even if Green did have title to the undivided half interest levied on, his acts, conduct, and declarations to the constable at the time of the levy estop him from setting up and maintaining his claim.   Without reference to the first contention, enough is disclosed by the evidence to require the reversal of the judgment on the second ground insisted upon.

We think the evidence clearly shows that on the 7th of June, 1887, the constable came to the store of Green with the execution to levy on the undivided half of the stock of goods and so informed Green, who told the constable he owned one-half the stock, and as to the other half he didn't know whether Moore or Nesmith owned it; that he did not know who the other half belonged to unless Nesmith's wife owned it.   The constable told Green he would levy on the undivided half interest in the stock, and did so at the store, and left it in the custody of appellee upon his promise that the goods should be there all night, and undisturbed the next morning, the

time fixed by the constable when he would return there. On returning the next morning the constable was informed by appellee that the latter was the owner of the entire stock of goods, and the notice of his claim to the property levied on was then served upon the constable and this proceeding was thus commenced. Appellee also testified he did not tell the officer he owned the whole stock, and claimed to own but a half interest at the time of the levy, because he wanted to *shield Nesmith* and *not give him away;* that on the evening of the day the levy was made he went to see Nesmith and was with him. Admitting the doctrine of estoppel to be substantially as laid down in the cases cited by counsel for appellee, the facts proven in this case estop appellee from setting up and maintaining his claim to the property levied on; he was called upon to speak as to the ownership of the said property, by the officer, and was bound to speak the truth; he spoke, and the officer relied upon the truth of his statements and acted by making the levy, and thereby occupied a position he would not have occupied had appellee then claimed to own the entire stock. The officer was thus induced to make no further search for other property to levy on; and the avowed purpose of appellee in thus deceiving him being to *shield Nesmith,* one of the defendants in execution, and *not give him away,* taken in connection with appellee's visit to Nesmith at night, and his change of front as to the ownership of the stock the next morning, are acts and declarations indicating a fraudulent purpose of appellee in deceiving the officer and inducing him to make the levy.

In Leeper v. Hersman, 58 Ill. 218, it is said of the party claiming the horse in controversy as owner, against the sheriff who had levied upon it under execution, "his silence as to his claim, and his subsequent acts in contravention of his present claim, were a virtual acknowledgment, he had no title to the property at the time of the levy. The action of the officer was necessarily influenced by such conduct, and such must have been his intention. There was also injury to the sheriff; he was delayed in the performance of his official duties and hindered in an immediate search for other property." In the

case cited, the owner executed a delivery bond; in this case, appellee accepted the custody of the property levied on, and, in substance, agreed it should remain and be there at the place of levy the next morning, all right and not disturbed when the officer returned for it.    Colwell v. Brower, 75 Ill. 516.

The doctrine of estoppel *in pais* is to prevent injuries arising from acts or declarations which have been acted on in good faith, and which it would be inequitable to permit the party to retract.    In order to create such an estoppel, the party estopped must have induced the other to occupy a position he would not have occupied but for such acts and declarations.    Ball et al. v. Hooten, 85 Ill. 159.

It was error to deny appellant's motion for a new trial and render judgment on the verdict.    The judgment of the Circuit Court is reversed and the cause remanded.

*Reversed and remanded.*